UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON LAWYERS' COMMITTEE<br>FOR CIVIL RIGHTS AND URBAN AFFAIRS,<br>11 Dupont Circle, NW<br>Suite 400<br>Washington, DC 20036<br><br>      Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF HOUSING AND<br>URBAN DEVELOPMENT,<br>451 7th Street S.W.,<br>Washington, DC 20410,<br><br>      Defendant. | Case No. 1:19-cv-29 |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff Washington Lawyers' Committee for Civil Rights and Urban Affairs, by counsel, respectfully states as follows for its Complaint against Defendant, the U.S. Department of Housing and Urban Development.

**NATURE OF ACTION**

1. This is an action under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552; and the Federal Declaratory Judgment Act (the "FDJA"), 28 U.S.C. §§ 2201& 2202. Plaintiff seeks injunctive and declaratory relief to compel defendant to disclose requested records.

1

## PARTIES

2. Plaintiff Washington Lawyers' Committee for Civil Rights and Urban Affairs ("WLC" or "Plaintiff") is a non-profit corporation organized and existing under the laws of the District of Columbia. WLC's principal place of business is 11 Dupont Circle, NW, Suite 400, Washington, DC 20036. WLC works to create legal, economic and social equity through litigation, client and public education and public policy advocacy. WLC accomplishes these ends by partnering with individuals and communities facing discrimination and with the legal community to achieve justice.

3. Defendant Department of Housing and Urban Development ("HUD") is a department of the executive branch of the United States Government. HUD is an "agency" within the meaning of 5 U.S.C. § 552(f).

## JURISDICTION AND VENUE

4. This action arises under two federal statutes, the FOIA, and the FDJA.

5. Subject matter and personal jurisdiction are proper in this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201(a) & 2202 (creation of declaratory remedy and further relief based thereon), and the FOIA, 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant").

6. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) in that Plaintiff has its principal place of business in the District of Columbia, and the agency records are situated in the District of Columbia.

## FACTS

### (Barry Farm Public Housing Community and Barry Farm Redevelopment Plan)

7. Barry Farm is a public housing community, organized as a complex of row houses, situated east of the Anacostia River in Ward 8 of Southeast Washington D.C. The area is bounded by two high capacity urban roads—Suitland Parkway on the east and Interstate 295 on the north. To the east of Barry Farm, across Suitland Parkway, is the Anacostia Metro Station and to the west is the St. Elizabeth's Hospital West campus. Barry Farm has historically been and continues to be a primarily African-American public housing community, which is home to many families with children.

8. In 2006, the D.C. Council approved the Barry Farm Redevelopment Plan (the "Plan").[1] According to the District of Columbia, the goal of the redevelopment of Barry Farm "is to transform the public housing development into a mixed-income, mixed-use community."[2] As originally conceived, the planned Barry Farm redevelopment would consist of approximately 1,100 units.[3] The Plan affects 444 existing public housing rental units, including 432 units at the existing Barry Farm property (an additional 12 existing rental units at the adjacent Wade Apartments property are also included in the Plan).[4]

---

[1] Barry Farm Development Plan, New Communities Initiative, http://dcnewcommunities.org/barry-farm-development/ (last visited December 5, 2018).
[2] *Id.*
[3] *Id.*
[4] *Id.*

9. Pursuant to the Plan, on July 31, 2013, the Board of Commissioners of the District of Columbia Housing Authority ("DCHA") selected Preservation of Affordable Housing ("POAH") and A&R Development ("A&R") to act as a private sector development team for Barry Farm.[5] POAH is a non-profit developer that focuses on housing for low- and moderate-income residents and has previously developed the Garfield Hill Apartments in D.C.  A&R is a Baltimore-based private developer that has served as a partner on several D.C. projects.

10. On February 20, 2014, the District of Columbia, DCHA, POAH, and A&R filed a first-stage Planned Unit Development application (the "First-Stage PUD") with the D.C. Zoning Commission.  DCHA, POAH and A&R together designated themselves collectively as the "applicant" for the First-Stage PUD (hereinafter the "Applicant").

11. At the time it was submitted to the Zoning Commission, the First-Stage PUD was the operative document that set forth the specific parameters for the redevelopment of Barry Farm.

12. The Zoning Commission approved the Applicant's First-Stage PUD on October 20, 2014 and adopted its decision on December 8, 2014.  The decision to approve the First-Stage PUD "bec[a]me final and effective upon publication . . . on May 29, 2015."[6] This approval

---

[5] Jonathan O'Connell, *Developers selected to redevelop Barry Farm public housing complex*, WASH. POST, July 31, 2013, https://www.washingtonpost.com/blogs/capital-business/post/developers-selected-to-redevelop-barry-farm-public-housing-complex/2013/07/31/4f882050-fa15-11e2-8752-b41d7ed1f685_blog.html?utm_term=.cf00ef639422 (last visited Dec. 5, 2018).

[6] ZC Order No. 14-02, Z.C. Case No. 14-02 (May 29, 2015) at 64-65. Because figures in the Barry Farm Redevelopment Plan conflict with figures in Applicant's Zoning Commission submissions and in the order of the Commission approving the First-Stage PUD for redevelopment of Barry Farm, this complaint will refer only to the figures provided in the Zoning Commission record going forward. The Commission's Findings of Fact stated that Applicant's request for additional time to complete its second stage-PUD was "necessary to allow the Applicant to proceed through

was appealed to the Court of Appeals for the District of Columbia by the Barry Farm Tenants and Allies Association, Inc. ("BFTAA"), which had served as the Party in Opposition during the Zoning Commission PUD proceedings.

13. On January 20, 2017, HUD issued its demolition disposition approval notice to Defendant DCHA for the demolition of Barry Farm and Wade Road. "HUD Demolition Approval Letter" attached as **Exhibit A**. HUD's Demolition Approval Letter stated that DCHA had submitted an original application, which was assigned HUD file number DDA0006740, on September 2, 2015. HUD requested additional information from DCHA, and DCHA resubmitted a revised application on November 7, 2016, as well as submitted supplemental information through January 19, 2017, one day prior to HUD's approval.

14. On April 26, 2018, the Court of Appeals for the District of Columbia issued a decision in the BFTAA's appeal that vacated the First-Stage PUD approval granted for the Barry Farm redevelopment by the D.C. Zoning Commission and remanded the case back to the Commission for further proceedings. The decision to vacate was based on a determination that the Zoning Commission's Order did not address a number of key issues relating to distribution of density on the redeveloped property, the number of units approved, the mix of housing types and affordability levels, adverse impacts stemming from the loss of current amenities (including concerns over loss of community and gentrification), and DCHA's plan for relocating these public housing residents.

---

the HUD funding and disposition processes; initiate predevelopment activities, and further engage with the community and existing residents," but it required the Applicant to meet certain benchmarks within the approved ten-year period by filing various second-stage applications.

The Applicant is required to file its second-stage application for the final phase of the redevelopment no more than 10 years after the effective date of the current order (May 29, 2025). *Id.* at at 64 ¶ E.1.

15. On April 27, 2018, DCHA Director Garrett sent a letter to Barry Farm residents, emphasizing DCHA's determination to continue with the court-vacated plan: "It is important to note that this decision does not mean that the redevelopment will not move forward. In remanding the case, the court is simply requiring that the Zoning Commission give fuller consideration and explain its determination on the issues identified by the court." *See* Letter from DCHA to Barry Farm Residents (Apr. 27, 2018), attached as **Exhibit B**.

16. On May 31, 2018, DCHA and its private-sector redevelopment partners gave notice that they were withdrawing their applications. At a meeting on June 11, 2018, the Zoning Commission accepted the withdrawal.

17. This lawsuit seeks records related to the demolition and disposition of the Barry Farm property, which, as set forth below, have been sought by way of Plaintiff's FOIA request. This information is of especially great public interest and urgency, as relocation and demolition activities have continued at the property, even in the absence of a coherent and approved redevelopment plan. It is imperative that Plaintiff receives this information before demolition and displacement of current tenants is complete, so that concerned residents, community members and other stakeholders have a full understanding of the circumstances surrounding changes that are causing and will continue to cause significant upheaval to themselves, their families and their neighbors.

**(Plaintiff's FOIA Request and Defendant's Response)**

18. By letter to HUD dated June 11, 2018, Plaintiff requested copies of agency records pertaining to the demolition and disposition of the Barry Farm property under the FOIA.

*See* Letter from WLC to HUD (June 11, 2018), attached as **Exhibit C**. Plaintiff described the records requested as follows:

1. Any document, record, or electronic file related in whole or in part to the demolition and disposition approval HUD provided the District of Columbia Housing Authority ("DCHA") on January 20, 2017 (see the attached letter), DDA0006740, for the Barry Farm Dwellings, DC001003090. This request includes but is not limited to:

   a. The original application submitted to HUD on September 5, 2016;

   b. Additional information received by HUD from the DCHA on April 7 and 15, 2016;

   c. The revised application submitted by DCHA on November 7, 2016;

   d. The District of Columbia Fair Housing and Equal Opportunity Program Compliance Branch memo dated December 8, 2016, stating it was satisfied with the supplemental information provided by DCHA;

   e. Materials submitted by DCHA in support of its application for HUD demolition and disposition approval, including all supplemental information sent through January 19, 2017;

   f. All documents containing information that HUD considered or upon which it relied in making decisions about the demolition or disposition of the property. This includes documents that constitute the administrative record supporting the decision to demolish or dispose of the Barry Farm property;

   g. All communications with third parties about the contemplated demolition, including any related documents related to such communications; and

   h. All the information on which HUD relied in making the decision to approve the demolition of the property from whatever source.

2. Documents sufficient to show the number of vacant units and bedroom sizes managed by DCHA as of 5/01/2018, 12/31/2017, 12/31/2016, 12/31/2015, and 12/31/2014.

3. Documents regarding any investigation or other consideration by HUD of whether DCHA's relocation efforts at Barry Farm are or have been consistent with the FHA and fair housing laws.

*See* **Exhibit C.**

19. In its letter to HUD dated June 11, 2018, Plaintiff requested a waiver of any search, review, or duplication fees associated with its FOIA request pursuant to 24 C.F.R. §

15.106(k)(i)&(ii).  Plaintiff further noted that the records were being requested "for the benefit of the general public in that they will be used by the Committee to aid our efforts to investigate fair housing issues under relevant civil rights laws." *See* **Exhibit C.**

20. On June 20, 2018, by letter to Plaintiff, HUD acknowledged receipt of Plaintiff's FOIA request and assigned it FOIA Control No. 18-FI-HQ-01747. *See* Letter from HUD to WLC (June 20, 2018), attached as **Exhibit D**.

21. By email message to Plaintiff dated June 25, 2018, HUD requested that Plaintiff forward a copy of the HUD Demolition Approval Letter referenced in the Plaintiff's FOIA request. *See* E-mails between Ethan G. Bodell, Government Information Specialist at HUD, and Plaintiff (June 25, 2018 to Nov. 9, 2018), attached as **Exhibit E.**

22. By email message to HUD dated June 27, 2018, Plaintiff provided HUD with a copy of the HUD Demolition Approval Letter referenced in Plaintiff's FOIA request. *See* E-mails between Ethan G. Bodell, Government Information Specialist at HUD, and Plaintiff (June 25, 2018 to Nov. 9, 2018), attached as **Exhibit E.**

23. By phone on August 9, 2018, Plaintiff and HUD discussed Plaintiff's FOIA request.  HUD advised Plaintiff that the review of Plaintiff's FOIA request would be completed in no more than two months.

24. By email message to HUD dated November 9, 2018, Plaintiff requested an update on the status of Plaintiff's FOIA request. Plaintiff referenced an earlier phone call "in the summer [where HUD] said that [HUD would] be able to get through the documents by late October." *See* E-mails between Ethan G. Bodell, Government Information Specialist at HUD, and Plaintiff (June 25, 2018 to Nov. 9, 2018), attached as **Exhibit E.**

25. By email message to Plaintiff dated November 9, 2018, HUD responded to Plaintiff. HUD agreed that the agency had been "hopeful that [it] would be able to clear [the FOIA package] by the end of October," but stated that "[d]ue to an influx of FOIA litigation, this and many other FOIA requests have temporarily been put on the backburner." *See* E-mails between Ethan G. Bodell, Government Information Specialist at HUD, and Plaintiff (June 25, 2018 to Nov. 9, 2018), attached as **Exhibit E.**

26. To date, Plaintiff has not received a final determination of its FOIA request dated June 11, 2018.

## CAUSE OF ACTION

**(Violation of the FOIA for Wrongful Withholding of Agency Records)**

27. Plaintiff hereby incorporates by reference the foregoing paragraphs as if set forth herein completely.

28. Pursuant to 28 U.S.C. §§ 2201–02, declaratory relief is appropriate.

29. Pursuant to the FOIA, all federal agencies are required to respond to a FOIA request within 20 business days, but this time limit may be extended when there are "unusual circumstances." 5 U.S.C. §§ 552(a)(6)(A)(i) and (a)(6)(B).

30. Pursuant to 5 U.S.C. §§ 552 (a)(6)(B)(iii), "unusual circumstances" are those where: "(I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request; (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial

interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein."

31. HUD has not demonstrated that the unusual circumstances exception applies.

32. Plaintiff has constructively exhausted the applicable and available administrative remedies with respect to Defendant's processing of Plaintiff's FOIA request due to Defendant's lack of any determinative response within the statutory time limit.

33. By failing to respond to Plaintiff's FOIA request within the required 20 business day statutory timeframe, and by failing to demonstrate unusual circumstances for the delay, Defendant has wrongfully withheld the requested records from Plaintiff.

34. As a result of the foregoing violation, Plaintiff is entitled to injunctive and declaratory relief with respect to the release and disclosure of the requested documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a mandatory injunction ordering Defendant Department of Housing and Urban Development to disclose, within 10 calendar days of its Order, all non-exempt records response to Plaintiff's FOIA request, with all processing fees waived;

B. Declare, adjudge, and decree that Plaintiff is entitled to disclosure of the requested records;

C. Award Plaintiff its costs of litigation, including reasonable attorneys' fees incurred in this action; and

D. Grant Plaintiff such other relief as may be necessary and appropriate or as the Court may deem just and proper.

Date: January 7, 2019                    Respectfully submitted,

                                              /s/ *Joseph Edmondson*
                                              Joseph Edmondson, D.C. Bar No. 433885
                                              Olivia S. Singelmann, D.C. Bar No. 1016299
                                              Hayley K. Wells, D.C. Bar No. 1049128
                                              Foley & Lardner LLP
                                              3000 K Street, N.W., Suite 600
                                              Washington, D.C. 20007-5109
                                              Telephone: (202) 672-5300
                                              Fax: (202) 672-5399
                                              jedmondson@foley.com
                                              osingelmann@foley.com
                                              hwells@foley.com

                                              *Attorneys for Plaintiff*